```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

TAMARA COUCH,                   )
                                )
            Plaintiff,          )
                                )
v.                              )    Case No. CIV-15-428-RAW-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )
```

## REPORT AND RECOMMENDATION

Plaintiff Tamara Couch (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on August 23, 1971 and was 42 years old at the time of the ALJ's decision. Claimant completed his high school education and two years of college. Claimant has worked in the past as a scrap sorter and administrative clerk. Claimant alleges an inability to work beginning May 30, 2012 due to limitations resulting from osteoarthritis, E-spine, lupus, joint problems, and mental problems.

**Procedural History**

On June 5, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 13, 2013, Administrative Law Judge Bernard Porter ("ALJ") conducted a video hearing with Claimant present in Ada, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On June 10, 2014, the ALJ issued an unfavorable decision. On September 10, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) positing questions to the vocational expert which did not reflect the ALJ's RFC findings; and (2) failing to include the totality of Claimant's limitations in the RFC.

4

**Testimony Elicited from the Vocational Expert**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, rheumatoid arthritis, hypertension, gastroesophageal reflux disease ("GERD"), bone spur of the right foot, bilateral plantar fasciitis, osteoarthritis of the knees, osteoarthritis of the spine, low vision, generalized anxiety disorder with panic disorder, anxiety disorder, and major depressive disorder. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform sedentary work with further limitations. In so doing, he found Claimant could lift, carry, push, and pull a maximum of ten pounds occasionally and less than ten pounds frequently with frequent handling, fingering, and feeling but was limited to occasional overhead reaching with both upper extremities and occasional use of hand controls. Claimant was found to be able to stand and/or walk for two hours in an eight hour workday and sit for six hours in an eight hour workday. Claimant was limited to the occasional use of foot controls and occasional climbing of ramps and stairs but never climbing of any ladders or scaffolds. Claimant could frequently balance and crouch, occasionally kneel, but never crawl. The ALJ determined Claimant could not read small print but could read ordinary newspaper and book print. She was precluded from work at

unprotected heights, around moving mechanical parts, and in environments with temperature extremes. Claimant was limited to simple tasks and simple work-related decisions with no more than occasional contact with co-workers and supervisors but no interaction with the general public with time off tasks accommodated by normal workday breaks. (Tr. 19).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of addresser, polisher, and weight tester, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 26). As a result, the ALJ found Claimant was not disabled from May 30, 2012 through the date of the decision. Id.

Claimant contends the ALJ's RFC as related in hypothetical questions to the vocational expert. Claimant asserts that while the ALJ limited her to simply tasks and work-related decisions and unable to read small print, the jobs identified by the vocational expert require detailed work, complex work, and require the ability to perform constant or frequent near acuity. Claimant also takes issue with the terms used by the ALJ in characterizing her impairments and limitations which do not necessarily coincide with those used in the *Dictionary of Occupational Titles* ("DOT").

"Testimony elicited by hypothetical questions that do not

relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

In the questioning of the vocational expert, the ALJ first inquired as to someone capable of performing light work - lift and carry 20 pounds occasionally, ten pounds frequently, sit, stand and walk for six hours, push and pull as much as they can lift/carry, occasional use of hand and foot controls, occasional overhead reaching with both upper extremities, occasional climbing ramps and stairs, no climbing ladders or scaffolds, frequent balancing, stooping, occasional kneeling, frequent crouching, never crawling. The hypothetical also included the limitation of an inability to read any small print but could read ordinary newspaper or book print. No work around unprotected heights, moving mechanical

7

parts, and no temperature extremes.

The hypothetical claimant was restricted in the questioning to simple tasks, simple work-related decisions with no more than occasional contact with supervisors, co-workers, and the public. Time off task would be accommodated by normal breaks. (Tr 69-70).

The ALJ then posed a second question which added the restriction of no interaction with the public. (Tr. 70). He then changed the original question to include only sedentary work. (Tr. 71). The vocational expert identified the jobs of addresser (*DOT* #209.587-010), polisher (*DOT* #713.684-038), and film touch up inspector (*DOT* #726.684-050). (Tr. 71).

The third question posed by the ALJ was the same as the prior question but limited the hypothetical to frequent handling, fingering, and feeling with both upper extremities. The vocational expert identified the polisher, addresser, and weight tester jobs which eventually found their way into the ALJ's decision. (Tr. 71-72).

Claimant's argument that the ALJ should have utilized that same terms in his RFC as are reflected in the DOT is easily rejected. Nothing in the prevailing case authority or in the regulations requires that an ALJ mirror the language employed in the DOT. In fact, with regard to vision acuity, the Tenth Circuit

has concluded the opposite. Nelson v. Colvin, 655 Fed. Appx. 626, 630 (10th Cir. 2016). The ALJ is required to express the impairments in terms of "work-related functions" or "[w]ork-related mental activities." Soc. Sec. R. 96-8p, 1996 WL 374184 at 6. The ALJ did not deviate from this requirement. This argument fails.

The ALJ expressed Claimant's vision impairment with specificity which the vocational expert interpreted in light of the requirements of the three jobs he identified. All three required some level of near acuity which the vocational expert considered. No error is perceived from this process.

She next contends the ALJ's findings that Claimant can perform jobs classified in the DOT as "detailed" jobs are inconsistent with the RFC for Claimant which limits her to "simple" work. The job of addresser identified by the vocational expert requires a reasoning level of 2, which is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT #209.587-010. A polisher also requires a reasoning level of 2. DOT #713.684-038. A weight tester requires a reasoning level of 3, which is defined as "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with

9

problems involving several concrete variables in or from standardized situations." DOT #539.485-010.

The binding, published authority on this issue in this Circuit is found in the case of Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005). In Hackett, the court found jobs with a reasoning level of 3 were inconsistent with the RFC established by the ALJ which limited the claimant to "simple and routine work tasks." Id. at 1176. This would appear to eliminate the job of weight tester but not limit the jobs of addresser and polisher which only require a reasoning level of 2. In accordance with the court's findings in Hackett, a restriction to simple work is consistent with this reasoning level. Id. As the vocational expert identified two representative jobs which accommodated Claimant's RFC, the ALJ was entitled to rely upon the vocational expert's testimony at step five and no error is found on this basis.

**RFC Determination**

Claimant contends the ALJ failed to include limitations for anxiety and major depressive disorder after finding these conditions to be severe impairments. As an initial matter, Claimant states in her briefing that "[i]f the ALJ believed she had the moderate impairments he found at step 2, then his RFC should properly reflect those moderate impairments at step 5." Claimant

10

then cites to the transcript at pages 17-19. This portion of the ALJ's decision contains his analysis at step three, including findings of moderate limitations in concentration, persistence, or pace and social functioning. (Tr. 17-19). The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96–8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013).

Moreover, Claimant's suggestion that the ALJ's limitations in the RFC to simple tasks and simple work-related decisions with no more than occasional contact with co-workers and supervisors but no interaction with the general public with time off tasks accommodated by normal workday breaks did not adequately address her mental impairments is not supported. After suffering from anxiety and depression, Claimant received medication which improved her condition. By April of 2013, Claimant was noted to be alert, well-groomed, oriented to person, place, date, and situation, calm

11

and cooperative, with good eye contact, normal speech, nervous mood, congruent and reactive affect, logical and goal oriented thought processes, intact associations, with no paranoia or delusional material elicited, no suicidal or homicidal ideations, good insight, and good judgment. She was diagnosed with major depressive disorder, recurrent, mild panic disorder with a GAF of 70. (Tr. 530). In August of 2013, Claimant's mood had improved to "pretty good" and her GAF had improved to 75. (Tr. 583-84).

An evaluation of Claimant's records by Dr. Julia Wood, a state agency psychologist, revealed Claimant was moderately limited in her ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, agility to accept instructions and respond appropriately to criticism from supervisors, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and ability to respond appropriately to changes in the work setting. Dr. Wood found Claimant to be markedly limited in the ability to interact

12

appropriately with the general public. (Tr. 84-86). Dr. Wood concluded Claimant could understand, retain, and follow simple instructions involving two-steps, but not retain or understand complex instructions. Claimant's problems were mostly found to be in the area of dealing with the general public. Claimant could deal with co-workers and supervisors on a non-confrontational basis. (Tr. 86).

The ALJ's RFC accommodated these restrictions. (Tr. 19). "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no

requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE